UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED: MAY 2 2 2007         │  TS
└─────────────────────────────────┘
```

GAJANAN VENGURLEKAR and
UMESH PACHPANDE, individually and on
behalf of all other similarly situated,

             Plaintiffs.

-v-

             No. 03 Civ. 0243 (LTS)(DFE)

HSBC BANK and GETZLER &
COMPANY, INC.,

             Defendants.

-----------------------------------------------------------------

## OPINION AND ORDER

APPEARANCES:

SQUITTIERI & FEARON
  By: Lee Squitieri, Esq.
     Daniel R. Lapinski, Esq.
32 East 57th Street
New York, New York 10022

PHILLIPS LYTLE LLP
  By: Kevin English, Esq.
     David J. McNamara, Esq.
437 Madison Avenue
New York, New York 10022

LAW OFFICES OF N.M. GEHI
  By: Naresh M. Gehi, Esq.
118-21 Queens Boulevard
Suite 513, 5th Floor
Forest Hills, New York 11375

MOSES & SINGER LLP
  By: Mark N. Parry, Esq.
     Erica D. Busch, Esq.
1301 Avenue of Americas
New York, New York 10019

*Attorneys for Plaintiffs*

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs Gajanan Vengurlekar and Umesh Pachpande (collectively "Plaintiffs") bring this action on behalf of themselves and others similarly situated, asserting claims for alleged violations of the fiduciary conduct provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), violations of the New Jersey Wage Payments Law, N.J. Stat. Ann. § 34:11-4.2, and violations of the New Jersey Uniform Fraudulent Transfer Act, N.J. Stat. Ann. § 25:2-20 et seq. ("UFTA"), by HSBC Bank USA ("HSBC") and Getzler & Company, Inc. ("Getzler") (collectively "Defendants"). Plaintiffs additionally assert common law claims of breach of fiduciary duty and unjust enrichment.

The Court has federal question jurisdiction of Plaintiffs' ERISA claims pursuant to 29 U.S.C. § 1132(e) and (f). See Vengurlekar v. HSBC Bank, No. 03 Civ. 0243, 2004 WL 856292 at *1 (S.D.N.Y. Apr. 20, 2004). The court has supplemental jurisdiction of the state statutory and common law claims pursuant to 28 U.S.C. § 1367. Plaintiffs now move for class certification under Rule 23 of the Federal Rules of Civil Procedure with respect to their ERISA claims, UFTA claims, and common law claims.[1]  Defendants oppose the motion.

## BACKGROUND

During 2001 and 2002, Plaintiffs were employees of Silverline Technologies, Ltd. ("Silverline"). (Compl. ¶ 2.) During this time, Plaintiffs allege, Silverline failed to pay Plaintiffs' wages, failed to deposit monies withheld from paychecks in pension accounts, and failed to pay for health and other benefits. (Id.)

On or about January 5, 2001, and March 4, 2002, Defendant HSBC extended a \$30

---

[1]     Plaintiffs have withdrawn their request for class certification as to their claims under the New Jersey Wage Payment Act (Pltfs.' Reply Mem. at 1.)

million line of credit to Silverline. (See Kevin J. English Aff. in Opp. to Class Cert., "English Aff.," Ex. 3 at 2.) HSBC had a security interest in "Silverline's equipment, consumer goods and fixtures, and Silverline's accounts, general intangibles and chattel paper including leases." (Id.) On or before May 2002, HSBC claimed that Silverline was in default under the credit line and, in or about June 2002, proceeded to bring an action against Silverline to recover the security interest and the amounts due under the credit line. (Compl. ¶¶ 22, 23; English Aff., Ex. 3 at 1.) On June 5, 2002, the court in that collection action issued a preliminary injunction ("preliminary injunction") against Silverline relating to HSBC's security interest and the daily operations of Silverline. (See English Aff., Ex. 3.) Specifically, Silverline could not liquidate or otherwise dispose of the property that was subject to the security interest. (See id. at 5.) The preliminary injunction order also required Silverline to consult with Defendant Getzler in the management of the day to day operations of Silverline. Under the terms of the preliminary injunction, Silverline, in consultation with Getzler, was allowed to use cash proceeds from accounts receivable to pay current expenses incurred in the ordinary course of business, as determined to be reasonable and necessary for the continuation of Silverline's business. (See id. at 5-6.) On September 18, 2002, Silverline and HSBC entered into a Settlement Agreement ("Settlement Agreement"). (See id., Ex. 4.) Pursuant to this agreement, Mark Samson of Getzler was to "assume management responsibility over Silverline" and was to "have exclusive authority to control direct disbursements, bank accounts, bank account activity and operational matters . . . all to the exclusion of existing management." (See id., ¶ 6(a).)

Plaintiffs allege that Defendants, using their management authority, directed that millions of dollars be transferred from Silverline to HSBC, rendering Silverline insolvent and

unable to pay Plaintiffs' wages, health and other benefits, and pension plan contributions, and thereby violating the UFTA. (Compl. ¶¶ 50, 34, 2.) Plaintiffs further allege that, by virtue of the provisions of the preliminary injunction and the Settlement Agreement, Defendants became, inter alia, trustees of the funds held in trust for Plaintiffs and class members, and ERISA fiduciaries with respect to pension plan assets. (Id. at ¶ 27 - 29.) Plaintiffs assert that the failure to make pension plan payments violated ERISA. Plaintiffs claim that, on and after June 18, 2002, Defendants failed to pay wages, health and other benefits and pension plan contributions, and "otherwise exceeded the scope of the preliminary injunction" by transferring the money to HSBC instead. (Id. at ¶ 34.) Finally, Plaintiffs allege that, as a "direct and proximate result" of these actions, Defendants have been unjustly enriched and "Plaintiffs and the Class have been otherwise damaged." (Id. at ¶ 59.)

Plaintiffs move the Court to certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In support of their motion for class certification, Plaintiffs have submitted declarations from over twenty putative class members who assert that they are owed unpaid pension plan contributions, wages, and health insurance. (See Lee Squitieri Aff. in Supp. of Mot. for Class Cert. "Squitieri Aff.," Ex. B.) Plaintiffs have also submitted letters from the New Jersey Department of Labor to the President of Silverline dated November 25, 2002, and December 17, 2002, stating that Silverline is in violation of state law in connection with overdue wages totaling $4,583,265.00. (See id., Exs. D, E.) Additionally, Plaintiffs have submitted spreadsheets detailing individual employees' 401(k) contributions as of October 30, 2002, as well as individual employees' outstanding wages from July 27, 2002. (See Daniel Lapinski Decl. in Supp. of Mot. for Class Cert., "Lapinski Decl.," Exs. C, B.). Plaintiffs further proffer a document indicating that the total unpaid pension contribution from 2001 and 2002 totaled $878,914.94. (See id., Ex. A.)

Finally, Plaintiffs proffer a deposition from a Silverline representative that suggests Silverline, at the request of Defendant HSBC, did not pay salaries so that funds could be directed toward paying down the debt owed to HSBC, as well as emails which suggest that as of January 2003, HSBC had collected eight million dollars from Silverline, (See id., Exs. D, E.) Defendants do not proffer any evidence directly contradicting the statements or numbers in these documents.

## DISCUSSION

### Collateral Estoppel Does not Bar the Application

As an initial matter, the Court notes that Defendants argue that the doctrine of collateral estoppel bars Plaintiffs from seeking class certification because they had previously sought and were denied certification in a similar action, captioned Vengurlekar v. Silverline Technologies, Ltd., 220 F.R.D. 222 (S.D.N.Y. 2003). "In order for collateral estoppel to apply, four elements must be met: (1) the issues raised in both proceedings must be identical; (2) the relevant issues must have been actually litigated and decided in the prior proceeding; (3) the party to be estopped must have had a full and fair opportunity to litigate the issues in that prior proceeding; and (4) resolution of the issues must have been necessary to support a valid final judgment on the merits." Dynacore Holdings Corp. v. U.S. Phillips Corp., 243 F. Supp. 2d 31, 35 (S.D.N.Y. 2003).

The doctrine of collateral estoppel is not applicable, as the judgment in the prior case was not a final judgment on the merits. The district judge in the prior suit denied certification and entered a stipulation and order of dismissal without prejudice. See Vengurlekar, 220 F.R.D. at 232; (English Aff. Exhibit 6, Docket Entry #26.); see Semtek Int'l Inc. v. Lockheed Martin Corp.,

531 U.S. 497, 505 (2001) (finding that dismissal without prejudice is not an adjudication on the merits); see also Coopers Lybrand v. Livesay, 437 U.S. 463 (1978) (finding that district court decision denying class certification is not final decision); City of New York v. Int'l Pipe & Ceramics Corp., 410 F.2d 295 (2d Cir. 1969) (same).

The Class Certification Application

Turning to the class certification analysis, the Court notes that the Second Circuit has recently ruled on what standards govern a district judge in adjudicating a motion for class certification under Federal Rule of Civil Procedure 23.  In re Initial Public Offering Securities Litig., 471 F.3d 24, 41 (2d Cir. 2006).  Under this new standard, a district court must make any disputed factual calls that are relevant to certification, and must make merits determinations to the extent they relate to Rule 23 requirements.  See id.  Specifically, the Circuit held that "there is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met before certifying a class just because of some or even full overlap of that requirement with a merits issue.  We thus align ourselves [with other circuits' precedents] that have required definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues."  Id.  Accordingly, the Court will undertake a thorough analysis as to Plaintiffs' class certification motion and make appropriate findings in connection with the Rule 23 requirements.

Here, Plaintiff seeks certification of a class of "all current and former employees who worked for Silverline in the United States who were owed wages, or whose pension plan contributions were outstanding during the period from June 18, 2002 to the present." (Compl. ¶

11.) The Court, having considered carefully the arguments and proffers of the parties, finds that certification is appropriate as to Plaintiffs' ERISA and UFTA claims regarding outstanding compensation and benefit obligations (other than such claims relating to health benefits).

Rule 23 of the Federal Rules of Civil Procedure contains two prerequisites for class certification. First, the party seeking class certification must show that the four requirements of Rule 23(a) have been met. Those requirements include: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

Second, the party seeking class certification must also show that the proposed class action fits into one of the three categories of class actions listed in Rule 23(b). Those categories encompass class actions where: (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication. Fed. R. Civ. P. 23(b). See also Marisol v. Giuliani, 26 F.3d 372 (2d Cir. 1997). Here, Plaintiffs seek certification under prong three.

"'Rule 23 is given liberal rather than restrictive construction and courts are to adopt a standard of flexibility.'" Marisol, 126 F.3d at 377 (quoting Sharif ex rel. Salahuddin v. New York State Educ. Dep't, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)). However, a district court must only

grant class certification "'after a rigorous analysis.'" Caridad v. Metro-North Commuter R.R, 191 F.3d 283, 291 (2d Cir. 1999) (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982)).

### A. Rule 23(a)

*1. Numerosity*

The party seeking certification must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Numerosity can be presumed at a level of forty members. Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). However, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993) (certifying a class estimated to have between 22 and 133 members). That said, district courts must make factual findings as to the approximate size of the class based on the parties' evidentiary proffers. In re Initial Public Offering Securities Litig., 471 F.3d 24, 40 (2d Cir. 2006).

Additionally, "impracticable does not mean impossible." Robidoux, 987 F.2d at 935. In order to determine practicability, a court must look not only at the numbers alleged by plaintiffs, but also at the circumstances surrounding the suit. Id. at 936. Relevant circumstances include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." Id.

Though Plaintiffs assert that they cannot determine the exact number of class

members because the facts relating to this calculation are in the control of Silverline and/or Defendants, Plaintiffs estimate that the class will include hundreds of members. (See Compl. ¶ 12.) Specifically, Plaintiffs estimate that one hundred Silverline employees were affected by Defendants' failure to make 401(k) contributions and that an additional one hundred employees were owed unpaid wages. (See Pltfs.' Reply Mem. at 6.)

While it is not clear exactly how many members will be in the class, the Court finds that Plaintiffs have satisfied the numerosity requirement based on their evidentiary proffers. The individual affidavits attesting to outstanding pension benefits and wages along with the documentary evidence of large outstanding 401(k) and wage obligations support a finding that the class exceeds at least fifty members. The Court notes here that because 401(k) deferral contributions are limited to $10,000 per year,[2] the large unpaid 401(k) "employee contribution" obligation for 2002 alone supports a finding that the class size exceeds 40. The Court notes in this connection that the million of dollars in outstanding wage payments, on its own, without factual proffers that these payments were, for example, merely a bonus for senior executives, also supports a finding that Plaintiffs have satisfied the numerosity requirement.

Defendants argue that the numerosity requirement is not met because a number of the employees who submitted declarations were no longer employed at Silverline by September 18, 2002, the date upon which Defendant Getzler assumed certain management responsibility for

---

[2]     See 26 U.S.C. §§ 401(k)(11)(B)(i)(I), 408(p)(2)(A)(ii) and (2)(E)(i). The Court notes here that the $10,000 limit was imposed beginning in calendar year 2005 and that prior to that year the limits were lower. See 26 U.S.C. 408(2)(E)(i). Even assuming, however, the maximum of $10,000 as the benchmark for the cap on employee deferral contributions, the proffered overall yearly 401(k) employee deferral contribution amount for 2002 easily supports a class size of over 40.

Silverline.[3]  However, in connection with the ERISA and fraudulent transfer causes of action, the

employee status of the purported members of the class is not relevant.  See 29 U.S.C. § 1002(7)

(noting that a participant of an ERISA plan may be a former employee who is eligible for benefits).

See also Joseph v. New Orleans Elec. Pension & Ret. Plan, 754 F.2d 628 (5th Cir. 1985).  See N.J.

Stat. Ann. § 25:2-25.  See MFS/SUN Life Trust-High Yield Series v. Van Dusen Airport Servs.

Co., 910 F. Supp. 913, 931 (S.D.N.Y. 1995) ("[A]ny fraudulent conveyance claim is derivative: it

is predicated upon an underlying debtor-creditor relationship.").  It is sufficient that at some point

the class members were employees at Silverline and that they were owed ERISA benefits and

wages when Defendants were managing Silverline's day to day activities.

       The Court further finds that joinder of all members of the class is impracticable.  As

class members no longer work for Silverline, it may be difficult to locate all of them. (See Squitieri

Dec., Ex. D); see Smellie v. Mount Sinai Hosp., No. 03-0805, 2004 WL 2725124, at *1 (S.D.N.Y.

Nov. 29, 2004) (finding joinder impracticable because some class members no longer work for

employer and may be difficult to locate).  Additionally, Plaintiffs have shown that some of the

members are geographically dispersed. (See Squitieri Dec., Ex. B.)  Finally, Plaintiffs assert that,

---

[3]      Defendants argue that Getzler did not take control of Silverline until September
18, 2002, the date of the Settlement Agreement, while Plaintiffs allege that the
operative date is June 17, 2002, the date the preliminary injunction order was
entered.  The preliminary injunction order provides that Silverline was to pay
expenses in the ordinary course of business after consultation with Defendant
Getzler.  Based on this order and in the absence of specific evidence relating to
the company's arrangements prior to the September 2002 Settlement Agreement,
the Court concludes on the instant record that Defendant Getzler was at least
partly responsible for the determinations as to payment of Silverline's day to day
expenses from June 17, 2002.  In any case, for the purposes of the numerosity
analysis, it does not matter on what date Defendants became responsible for
Silverline's day to day operations.

since the class members have not received wages for an extended period of time, some may not have the economic ability to bring actions of their own. See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). The Court finds that the numerosity requirement has been met.

## 2. *Commonality and Typicality*

The commonality and typicality criteria for class certification tend to merge "because '[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999) (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982)). The commonality requirement of Rule 23(a) requires the party seeking class certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). The typicality requirement demands that the claims of the party seeking certification are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "This criterion does not require that the factual background of each named plaintiff's claim be identical to that of all class members." Caridad, 191 F.3d at 293. Rather, the typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936. A difference in the amount of damages arising from differing degrees of injury does not preclude either commonality

or typicality.  See Medicare Beneficiaries' Def. Fund v. Empire Blue Cross Blue Shield, 938 F.

Supp. 1131, 1147 (E.D.N.Y. 1996)

Here, Plaintiffs have met their burden of demonstrating the requisite commonality

and typicality of their claims.  The common issues include whether Defendants' transfers of funds

from Silverline to HSBC violated ERISA pension contribution and fiduciary requirements, and

whether such transfers were fraudulent in relation to Silverline's pre-existing obligations.

Individual questions as to amounts of money withheld and/or unpaid do not predominate over these

common legal and factual questions.  Nor does defendants' vague reference to "affirmative

defenses" raise any issue precluding a finding of typicality of the named plaintiffs' claims on the

current record.

The Court finds, however, that Plaintiffs have not satisfied the commonality and

typicality requirements with regard to their class action claims for health benefits[4]  and unjust

enrichment.  In connection with the allegedly unpaid health benefits, Plaintiffs have not proffered

evidence sufficient to show that the purported class suffered the loss of such benefits.  Health

benefits are only mentioned in some of the declarations of the potential class members. Without

further substantiation that deprivation of these benefits was common to members of the proposed

class, the Court cannot conclude that the typicality and commonality requirement have been

satisfied.

As to the unjust enrichment claims, it is not clear from the evidentiary proffers, how

many class members continued to work without being paid after Defendants became involved in

---

[4]     It is not clear whether Plaintiffs seek certification on the loss of health benefits
issue.  (See Compl. ¶ 11; but see Pltf's. Mem. of Law in Support of Class
Certification at 10.)

the company management.  There appear to be questions of individual motivation in continuing to

work, and whether and to what extent wages were earned after the Defendants became involved in

Silverline's day to day activities pursuant to the June 2002 preliminary injunction order.  The Court

therefore concludes that Plaintiffs have failed to carry their burden of demonstrating that their

unjust enrichment claims are common or typical of those of the class members.


*3. Adequacy*

The adequacy requirement of Rule 23(a) "requires a two-pronged inquiry:  (1) class

counsel must be qualified, experienced, and generally able to conduct litigation; and (2) class

members must not have antagonistic interests to one another."  Banyai v. Mazur, 205 F.R.D. 160,

164 (S.D.N.Y. 2002) (internal quotation and citation marks omitted).  Since the Plaintiffs' claims

are similar to those of the class, Plaintiffs' interests in recovering their claimed damages are not

antagonistic to those of the other class members.  Additionally, Plaintiffs' counsel have

demonstrated their willingness and capability to represent the Plaintiffs and the class.  Thus, the

adequacy requirement has been met.


B. Rule 23(b)

Once Plaintiffs have met the requirements of Rule 23(a), Plaintiffs must also

demonstrate that the class action is maintainable under Rule 23(b).  Plaintiff asserts that this class

action is maintainable under Rule 23(b)(3), which requires that "questions of law or fact common

to members of the class predominate . . . and that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The

Rule directs courts to consider specific factors enumerated in subsection (3). These include: "(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The common questions involving Defendants' liability under ERISA and the UFTA, rather than the class members' individual claims for damages, predominate at this threshold stage of the litigation. Class members' interests in individually controlling the litigation of these liability questions are small. The interest of class members in individually controlling the prosecution of separate actions would relate primarily to questions of what wages and pension plan contribution amounts are owed with respect to each class member. "Rule 23(b)(3) is sufficiently flexible to permit the Court and counsel to manage any necessary damages determination proceedings in a manner that protects appropriately the individual class members' interests in pursuing claims tied to their particular factual situations." Smellie v. Mount Sinai Hosp., No. 03 Civ. 0805, 2004 WL 2725124, at *6 (S.D.N.Y. Nov. 29, 2004). Thus, the litigation control factor weighs in favor of certification.

The Court has not been made of aware of any other pending litigation concerning the subject matter of the proposed class action. Therefore, this factor also weighs in favor of certification.

The "desirability" factor weighs in favor of certification as well. Since Plaintiffs' and the proposed class members' claims are so similar, the alternative to a class action -- individual

state and federal actions -- would "rais[e] the very real prospect of inconsistent adjudications on the important common questions of fact and law, as well as the likely prospect of inefficient and duplicative use of judicial resources on the state and federal level." Smellie, 2004 WL 2725124 at *6. Thus judicial economy is better served by the maintenance of a class action.

Finally, the only arguments Defendant makes as to the difficulty likely to be encountered in the management of a class action relate to the individual questions that may arise regarding damages and affirmative defenses. (Def. Motion for Summary Judg. at 18.) Rule 23(b)(3) is sufficiently flexible to deal with these questions. The Court notes, in addition, that Rule 23 (c)(1)(C) allows the Court discretion in altering or amending its order granting class certification at any point before a final judgment.

Having considered all of the factors listed in Rule 23(b)(3), the Court concludes that Plaintiffs have carried their burden of demonstrating that the requirements of the Rule have been met and that class certification as to Plaintiffs' ERISA and UFTA claims (other than such claims relating to health benefits) is appropriate.

### C. Rule 23(g): Appointment of Class Counsel

Rule 23(g) requires that the Court appoint an attorney to serve as class counsel, who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A)-(B). In making this determination, the Court must consider the work counsel has done in "identifying or investigating potential claims in the action," counsel's previous experience with handling class actions, counsel's knowledge of applicable law, and the "resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C).

Here, Plaintiffs' counsel has sufficiently investigated and identified the potential claims in this action. Plaintiff's counsel also affirms in the Complaint that he is "competent and experienced in class action litigation." (Compl. ¶ 15.) Defendants do not proffer any contrary evidence. Accordingly, Lee Squitieri of Squitieri & Fearon is appointed as class counsel. Any fees or nontaxable costs in connection with Mr. Squitieri's work as class counsel shall be payable only in accordance with the procedures set forth in Federal Rule of Civil Procedure 23(h).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure of a class consisting of all current and former employees who worked for Silverline in the United States who were owed wages, and who are still owed wages, or whose pension plan contributions were outstanding, and are still outstanding, during the period from June 18, 2002, to the date of the Amended Complaint, (April 27, 2004), is granted with respect to Plaintiffs' ERISA and UFTA claims (other than such claims relating to health benefits) only. Plaintiffs' counsel shall promptly consult with defense counsel as to the appropriate form and content of class notice materials, and shall submit to the Court and serve on defense counsel drafts of such materials. Defense counsel shall file and serve any objection to the form or content of the proposed materials within ten days after receipt of Plaintiffs' drafts.

The parties shall promptly meet with Judge Eaton for settlement purposes, and shall prepare for and appear at a final pretrial conference before the undersigned as directed by the accompanying Pre-trial scheduling Order.

SO ORDERED.

Dated: New York, New York
     May 21, 2007

LAURA TAYLOR SWAIN
United States District Judge